## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LARRY COCHRAN,                 *

Petitioner,                   *

v.                         *       Civil Action No. JKB-21-0220

WARDEN,                   *

Respondent.                *
                            ***

## MEMORANDUM OPINION

Self-represented petitioner Larry Cochran, a federal inmate at Federal Correctional Institution ("FCI") Cumberland, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking his release from incarceration.  The United States has filed a Response, seeking dismissal of the Petition as a successive motion under 28 U.S.C. § 2255, and Cochran filed a Reply. Also pending are Cochran's Motion to Strike (ECF No. 14), Motion for Request for the Court to Take Judicial Notice of Indisputable Adjudicative Facts (ECF No. 16), Motion for Ruling on the Petition for an Emergency Enlargement Custody (ECF No. 17), Motion for Summary Judgment (ECF No. 25), and Emergency Motion for Immediate Release (ECF No. 26).

### I. Background

On November 15, 2007, a jury sitting in the United States District Court for the Northern District of Indiana found Cochran guilty of one charge of possession with intent to distribute five grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1).

Cochran argues in the Petition that he is entitled to federal habeas relief because cocaine base and crack cocaine do not constitute controlled substances under 21 U.S.C. § 841(a)(1). (Petition at 23, ECF No. 1; Reply at 4, ECF No. 15.)  His basis for this argument is that neither

"cocaine base" nor "crack cocaine" are listed in the Schedules of Controlled Substances in 21

U.S.C. § 812, and accordingly, he is actually innocent of the instant offense. (Petition at 6–7, 27–

28, 35, 40–43.)  Additionally, Cochran seeks an "enlargement of custody" to place him on home

confinement pending a decision on the merits of his Petition, asserting that the COVID-19

pandemic poses a danger to him as a "medically vulnerable high risk" inmate. (*Id*. at 16; *see* ECF

No. 8-1 at 4 (memorandum determining that Cochran meets "the requirements of Reduction in

Sentence for Debilitated Medical Conditions").)

### A.  Pre-Trial Motions

Following his arrest and detention, Cochran was represented by attorney Jerome Flynn,

who filed pre-trial motions to suppress evidence.  On September 8, 2006, the Northern District of

Indiana granted Cochran's request to appoint James Thiros as Cochran's new counsel, but it noted

that further requests for new counsel would not be granted. (*See* N.D. Ind. Docket, Opp'n Exh. 1

at #11–12, ECF No. 11-1.)[1]   Trial was scheduled for January 8, 2007. (*Id.* at #15.)  After a two-

part, pre-trial motions hearing on December 20, 2006, the court denied Cochran's motion to

suppress evidence. (*Id*. at #27.)  The next week, Cochran moved to proceed *pro se*. (*Id*. at #28.)

On December 29, 2006, following a *Faretta* hearing,[2] at which Cochran was advised about

the risks of self-representation, the district court granted the motion for petitioner to proceed *pro*

*se* and reset the trial for February 20, 2007, with Thiros acting as standby counsel. (*Id*. at #30.)

After the district court granted Thiros' motion to withdraw as standby counsel, attorney Charles

Stewart was appointed in his place. (*Id*. at #85.)  Stewart filed several motions on Cochran's

---

[1] Citations to ECF No. 11-1 are to docket entry numbers in the Northern District of Indiana case. *See United States v. Cochran*, Crim. JTM-No. 06-114 (N.D. Ind. 2007).

[2] *Faretta v. California*, 422 U.S. 806 (1975).  A *Faretta* hearing determines "whether the accused, who is seeking to manage his own defense, understands the consequences of waiving his Sixth Amendment right to counsel and is relinquishing that right knowingly and intelligently." *United States v. Cohen*, 888 F.3d 667, 672 n. 2 (4th Cir. 2018).

behalf, including one to continue trial, and the trial was rescheduled to start on June 11, 2007.  (*Id*. at #100.)

On April 30, 2007, Cochran moved to dismiss the indictment for lack of jurisdiction.  (*Id*. at #101.)[3]  On May 22, 2007, Cochran's counsel requested a psychiatric exam, to determine Cochran's competency to stand trial, and the district court granted another continuance of trial until November 13, 2007.  (*Id*. at #114, 130.)

On November 5, 2007, Cochran filed a *pro se* motion to dismiss the indictment on the grounds that it failed to specify a material element of the offense.  (*Id*. at #256, 269; *see also* ECF No. 1-1 at 10–17.)  Cochran argued that the Indictment was fatally defective because it failed to allege which of the four coca plant derivatives listed in 21 U.S.C. § 841(b)(1)(B)(ii) was in the specific cocaine base mixture he was alleged to have possessed with intent to distribute.  (ECF No. 1-1 at 10–17.)  The district court ruled that Cochran waived the argument because he failed to raise it by the pre-trial motions deadline and that the argument had no merit.[4]  (*Id.* at 36–40.)

### B.  Trial and Sentencing

Trial commenced on November 13, 2007.  Because Cochran refused to assure the court

---

[3]  Cochran pursued a "flesh and blood" or "sovereign citizen" *pro se* defense strategy at trial. In the Motion to Dismiss, Cochran stated:

> This Sovereign Secured Party/plaintiff demands the immediate dismissal of the "Fatally Defective" indictment, naming the Transmitting Utility LARRY Cochran as the defendant, by which this Sovereign Secured Party/Plaintiff/Flesh and Blood Man Larry Cochran is being held illegally captive as a surety or and [sic] accommodation party for the transmitting Utility LARRY COCHRAN."

(ECF No. 1-1 at 17.)

[4]  Cochran's criminal docket contains 700 entries.  (*See* Opp'n at 1, ECF No. 11.)  Since his conviction, Cochran, a frequent *pro se* filer of civil actions in federal courts, has accumulated at least three "strikes" under 28 U.S.C. § 1915(g) and one filing injunction.  (*See Cochran v. U.S. Dep't of Justice*, Civ. No. TLS-20-327, ECF No. 3 at 2 (N.D. Ind. Sept. 9, 2020) (collecting cases).)  In that case, the Northern District of Indiana noted that Cochran's "filing history demonstrates that he has known for a decade that his arguments lack merit and that his attempts to invalidate his conviction and sentence through any avenue other than filing a motion for authorization to file a successive petition with the Seventh Circuit are inappropriate."  (*Id*. at 3.)  The Public Access to Court Electronic Records ("PACER") system lists 189 civil cases filed by Cochran in federal courts.  *See* PACER, available at https://pacer.uscourts.gov (last accessed July 30, 2021).

that he would not disrupt the trial, he observed the proceedings from his cell through live audio and video.  The trial judge told prospective jurors during *voir dire* that Cochran had an absolute right not to be present in the courtroom during his trial, that Cochran's absence from the courtroom was not to be considered as evidence against him, and that his absence did not create any inference of guilt.  *See Cochran*, 309 F. App'x 2, 4 (7th Cir. 2009).  The jury returned a guilty verdict on the second day of trial.  (ECF No. 11-1 at #266.)

On January 25, 2008, Cochran, who was subject to a mandatory minimum sentence of sixty months of imprisonment, was sentenced to a term of 405 months, followed by five years of supervised release.  (*Id*. at #280.)  The sentencing court found that Cochran's relevant conduct included responsibility for approximately twenty grams of crack cocaine and an additional twenty kilograms of cocaine powder as well as obstruction of justice, making his combined offense level 36.  His extensive criminal history, totaling 21 criminal history points, placed him in Category VI of the Guidelines.  When combined with his offense level, this criminal history resulted in a sentencing range of 324 to 405 months.  (*Id*. at #457, 571.)

Since then, Cochran's sentence has been reduced twice.  First, pursuant to the Fair Sentencing Act and the U.S. Sentencing Commission's adoption of Amendment 782, Cochran's Guidelines offense level dropped by two points, and pursuant to 18 U.S.C. § 3582(c)(2), he was resentenced on January 13, 2015 to 327 months of imprisonment, the upper end of his new range. (*Id*. at #456.)  Second, under the First Step Act's mandate to reduce existing drug sentences if a prisoner's crime of conviction would presently carry a lower maximum sentence, the government agreed that Cochran's offense would now fall within § 841(b)(1)(C)'s penalty provision and carry a maximum penalty of twenty years' imprisonment.  (*Id*. at #571.)  On May 30, 2019, the district court resentenced Cochran to 240 months of imprisonment, followed by three years of supervised

release.  (*Id*. at #577; ECF No. 1-1 at 83.)

### C. *Post-Sentencing Proceedings*

Following his first sentencing, Cochran appealed his conviction and sentence, and the

Seventh Circuit affirmed both.  *See United States v. Cochran*, 309 F. App'x 2 (7th Cir. 2009), *cert.*

*denied*, 556 U.S. 1199 (2009).

Cochran then filed a Motion to Vacate his conviction and sentence pursuant to 28 U.S.C.

§ 2255 on September 8, 2009, which was denied on November 30, 2009.  *See United States v.*

*Cochran*, Crim. No. 06-114, 2009 WL 4638836 (N.D. Ind. Nov. 30, 2009).  On January 14, 2010,

Cochran moved for a certificate of appealability, which the district court also denied.  (*See* ECF

No. 11-1 at #371, 372.)

On September 21, 2010, Cochran filed a "Motion for Relief from a Judgment or Order

Pursuant to Rule 60(b)(5)," which the district court construed as a successive motion to vacate

under § 2255 and denied.  (*Id*. at #386–389.)  Cochran then filed another motion under § 2255,

which the district court denied on October 7, 2010.  (*Id*. at #393, 394.)  Cochran's appeals of both

of these denials were both dismissed by the Seventh Circuit for failure to pay the docketing fee.

(*Id*. at #403, 405, 413, 414.)

In July 2011, Cochran moved the district court to reopen his § 2255 motion, which the

district court recognized as a fourth motion under § 2255 and dismissed.  (*Id*. at #418, 419.)

Cochran appealed to the Seventh Circuit, and on January 30, 2012, the Seventh Circuit denied

Cochran's appeal from the denial of his certificate of appealability.  (*Id*. at #433.)

Cochran continued to file collateral challenges to his conviction in the Northern District of

Indiana and in the Seventh Circuit, prompting the Seventh Circuit to issue a show cause notice that

stated:

> [b]ecause our prior warning did not deter Cochran, we direct him to show
> cause why we should not fine him $500 pursuant to Federal Rule of Appellate
> Procedure 38.  We also warn Cochran that cases such as this one are subject
> to dismissal in the district court as unauthorized collateral attacks. Should he
> persist in his attacks on his sentence, he risks sanctions and a filing bar under
> *Alexander v. United States*, 121 F.3d 312 (7th Cir. 1997).

(*See id.* at #473.)

On February 8, 2021, the Seventh Circuit denied and dismissed Cochran's application for

an order to authorize a successive motion under 28 U.S.C. § 2255.  In the application, Cochran

presented essentially the same argument as in his § 2241 petition in this Court, asserting "newly

discovered evidence."  *Cochran v. United States*, Civ. No. 21-1210 (7th Cir. Feb. 8, 2021).  In

denying authorization, the Seventh Circuit observed that after his first § 2255 motion and

application for certificate of appealability were denied, Cochran unsuccessfully pursued five

motions to reopen § 2255 proceedings and made two further requests for a certificate of

appealability and that

> Cochran now applies for authorization to file a successive collateral attack.
> He contends that the indictment was invalid because it used the phrase "crack
> cocaine"—a phrase that does not appear in Schedule II's list of controlled
> substances. He also says that his original § 2255 proceedings should be
> reopened because, back in 2009, the district court did not address all of his
> claims. Neither argument meets the standard for a successive collateral
> attack.  Specifically, neither of them rests on new evidence proving
> Cochran's actual innocence, or on any new constitutional rule that the
> Supreme Court has made retroactive. (And for what it is worth, although
> Schedule II does not use the term "crack," crack cocaine nonetheless is a
> variant of "cocaine" covered by Schedule II.)

*Id.* (internal citations omitted); (*see also* ECF 11-1 at #700.).

After his sentence was reduced under Amendment 782, Cochran appealed the sentence

reduction as insufficient, which the Seventh Circuit denied as untimely.  (*Id.* at #494, 506.)  After

the district court denied a number of Cochran's motions in September 2018, Cochran appealed to

the Seventh Circuit, which dismissed the appeal on February 15, 2019 for failure to pay the

docketing fee.  (*Id*. at #532, 533, 555.)  Cochran also appealed his sentence reduction as insufficient

under the First Step Act.  (*Id*. at #586.)  On December 19, 2019, the Seventh Circuit upheld

Cochran's sentence reduction but remanded the case to the district court to consider Cochran's

compassionate release request based on his health issues.  (*Id*. at #612.)  On May 1, 2020, the

district court denied his Motion for Compassionate Release.  (*Id*. at #645.)  Cochran subsequently

moved the district court for compassionate release based on COVID concerns pursuant to the

CARES Act.  (*Id*. at #647, 655, 675.)[5]

On June 12, 2020, Cochran filed a "Jurisdictional Challenge Motion" to dismiss his

indictment for "Failure to State Offense – Stating a Non-Existent Offense For Lack of []

Jurisdiction."  (*See* ECF No. 11-2.)  In that motion, he raised essentially the same arguments as he

presents in the habeas motion now before this Court.  On November 24, 2020, the Northern District

of Indiana denied that motion along with eighteen other filings.  Regarding this specific argument

and five others that Cochran raised, the district court observed that "these issues have been or

should have been considered on direct appeal and/or via previous collateral attacks."  (*Id*. at #694.)

---

[5] The record does not reflect the outcome of that motion. This court, however, takes notice that when Cochran was incarcerated at FCI Elkton in Ohio, he filed an emergency petition pursuant to 28 U.S.C. §2241, alleging that he had been falsely accused of altering an approval letter concerning his request for compassionate release.  *Cochran v. Williams*, Civ. No. SO-20-1943, 2020 WL 7239642 (N.D. Ohio Dec. 9, 2020).  The Northern District of Ohio observed that on January 5, 2019, Cochran had filed a request for compassionate release with the Bureau of Prisons ("BOP") based on his deteriorating medical condition, asserting that is blind, wheelchair-bound, and suffers "severe cognitive defects," and he requires assistance with daily living skills.  On April 17, 2019, the BOP denied Cochran's request for release.  *Id*. at *1.  The denial letter acknowledged Petitioner's extensive medical history but indicated that after considering other applicable factors, Cochran did not have an approved release plan.  The denial letter also showed that Cochran had received an adjustment for obstruction of justice due to his failure to cooperate with the judge on his case, being disruptive in the courtroom, and denying his identity several times.  *Id*.  The district court determined that due process requirements were satisfied to support a finding that Cochran had altered the letter and denied habeas relief.
Subsequently, Cochran filed Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, for immediate release due to the COVID-19 pandemic and the outbreak of the virus at FCI Elkton, asserting that he was medically vulnerable and is a member of the class of prisoners represented in the § 2241 class action lawsuit addressing the spread of COVID-19 to medically vulnerable inmates at FCI Elkton.  *See Wilson v. Williams*, Civ. No. 20-794 (N.D. Ohio Apr. 13, 2020).  On February 8, 2021, the Northern District of Ohio dismissed the Petition as moot because Cochran was transferred to FCI Cumberland in November 2020.  *Cochran v. Williams*, Civ. No. PAB-20-1975, 2021 WL 428818, at *1 (N.D. Ohio Feb. 8, 2021).

## II. Petitioner's Pending Motions

The Court considers Cochran's Motion to Strike (ECF No. 14), Motion for Request for the Court to Take Judicial Notice of Indisputable Adjudicative Facts (ECF No. 16), Motion for Ruling on the Petition for an Emergency Enlargement Custody (ECF No. 17), Motion for Summary Judgment (ECF No. 25), and Emergency Motion for Immediate Release (ECF No. 26).

### A.  Motion to Strike

Federal Rule of Civil Procedure 12(f) permits district courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions under Rule 12(f) are generally disfavored and should be granted infrequently.  *Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 965 F. Supp. 2d 701, 704 (D. Md. 2013) (citing *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)); *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores*, 227 F. App'x 239, 247 (4th Cir. 2007).  The decision to grant or deny a motion under Rule 12(f) is discretionary.  *Renaissance Greeting Cards*, 227 F. App'x at 246.

Cochran seeks to strike the Government's Response in its entirety or in parts which he purports are irrelevant.  (Mot. Strike, ECF No. 14.)  The Motion to Strike describes Respondent's discussion of Cochran's underlying offense of conviction and case history, including conviction, appeal, § 2255 motions, and other post-conviction proceedings, as "irrelevant."  (*Id.* at 1–2.)  Cochran characterizes the Response as filled with "cherry-picked inaccurate factoids," which are based on a "negative and inaccurate representation" of his "prior court proceedings, filings, claims, issues and prior court rulings."  (*Id*. at 4.)  Cochran, however, provides no facts, evidence, or explanation to suggest the case history summarized in the Response, including decisions rendered by other federal trial and appellate courts, is inaccurate or irrelevant to discussion of the instant Petition.  Accordingly, the court shall deny the Motion to Strike (ECF No. 14).

### B.  Motion for Court to Take Judicial Notice of Indisputable Adjudicative Facts

A court may "take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  However, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

Cochran's motion asks this Court to take judicial notice that (1) he was "never charged, convicted, or sentenced, for possessing a controlled substance" in violation of 21 U.S.C. § 841(a)(1); (2) he was sentenced for a non-existent offense; and (3) his sentence presents an error sufficiently grave to be deemed a fundamental defect.  (Mot. Judicial Notice, ECF No. 16.)  Clearly, it would be inappropriate for this Court to take judicial notice of such assertions as indisputable adjudicative facts.  Not only have these issues been considered by the trial court and on appeal, but for reasons discussed below, this Court lacks jurisdiction to consider Cochran's claims on a § 2241 habeas review.  Accordingly, Cochran's motion (ECF No. 16) will be denied.

### C.  Motions for Ruling on Petition for An Emergency Enlargement and Emergency Motion for Immediate Release

Cochran requests an emergency ruling on the request in his Petition for an enlargement of his custody to place him in a halfway house or on home confinement, asserting that he is blind, physically handicapped, and "a medically vulnerable, high risk prisoner, highly susceptible to contracting COVID-19," who is allergic to the COVID-19 vaccine, and is "actually innocent" and

9

in custody for a "fundamentally defective sentence." (Mot. Emergency Enlargement at 2, ECF No. 17.) Cochran asserts that he has been placed on a list of medically vulnerable persons eligible and approved for compassionate release to home confinement or a halfway house. (*Id.*) He also observes that Respondent does not address his request for compassionate release in its Response. (*Id.*) Separately, in his Emergency Motion for Immediate Release, Cochran asks for enlargement of custody or immediate release, reiterating his arguments based on his health and actual innocence. (Emergency Mot. Immediate Release, ECF No. 26.)

In order to obtain preliminary injunctive relief, the moving party must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). A preliminary injunction is "an extraordinary remedy" that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The party requesting preliminary injunctive relief must satisfy all four of these requirements. *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

Cochran's requests for emergency release fail on the first prong of the *Winter* test, however, because this Court lacks jurisdiction to consider such motion. "Courts have found that a non-sentencing court does not have jurisdiction in such cases because only a sentencing court can allow a sentence reduction/compassionate release under 18 U.S.C. § 3582(c)(l)(A)(i), which means that the process must be undertaken in the district court where the prisoner was sentenced." *Allah v. Fed. Bureau of Prisons Dir.*, Civ. No. BHH-16-2665, 2016 WL 5868093, at *4 (D.S.C. Sept. 12, 2016). Accordingly, although this Court is sympathetic to Cochran's concerns in light of his extensive medical history, the proper place for him to seek compassionate release would be at the

court that sentenced him.  Accordingly, Cochran's Request for an Emergency Ruling on Cochran's

Petition for an Emergency Enlargement of Custody (ECF No. 17) and Emergency Motion for an

Immediate Release from Custody (ECF No. 26) will both be denied.

### D.  Motion for Summary Judgment

Cochran's Motion for Summary Judgment essentially repeats the arguments in his § 2241

Petition, Reply, and Motion to Take Judicial Notice.  The Motion for Summary Judgment (ECF

No. 25) will be denied without prejudice because this Court is without jurisdiction to consider

Cochran's claims for relief on the merits for the reasons set forth below.  *See infra* Part III.

## III.  Cochran's § 2241 Petition

The government argues that Cochran's habeas claims do not fall within the narrow

exception presented by the "savings clause," cannot be raised in a 28 U.S.C. § 2241 habeas

application, and that the Petition must be dismissed for lack of jurisdiction.  For the reasons set

forth below, the Court agrees.

### A.  Legal Standard

Federal prisoners ordinarily must challenge their convictions and sentences by way of a

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  *Farkas v. Butner*,

972 F.3d 548, 554 (4th Cir. 2020); *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997) (*en banc*).  After

a prisoner has filed one unsuccessful § 2255 motion, "he may not file another except under very

limited circumstances."  *Lester v. Flournoy*, 909 F.3d 708, 710 (4th Cir. 2018).  Specifically,

before filing a "second or successive motion," the prisoner must receive permission from the court

of appeals by making a *prima facie* showing that either (1) "newly discovered evidence" proves

he was not guilty of his offense or (2) a "new rule of constitutional law, made retroactive to cases

on collateral review by the Supreme Court, that was previously unavailable" entitles him to relief.

28 U.S.C. § 2255(h); *see also id*. § 2244(b).

There is one exception to the general rule that convicted federal prisoners must proceed under § 2255. Section 2255(e), known as the "savings clause," permits a prisoner to avoid § 2255 and its concomitant second or successive petition gatekeeping requirements and instead file a habeas petition under 28 U.S.C. § 2241 if it "appears that the [§ 2255] remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) ("It is only when '§ 2255 provides inadequate or ineffective to test the legality of detention,' that a federal prisoner may pursue habeas relief under § 2241."). Section 2241 petitions, unlike those filed under § 2254 or § 2255, are not subject to successive petition requirements. *Farkas*, 972 F.3d at 555 (citing *Lester*, 909 F.3d at 711 n.2); *but see McCarthan v. Dir. of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1090–91 (11th Cir. 2017) (*en banc*).

The "savings clause" is available only in "limited circumstances." *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000). Of import here, the savings clause cannot be used solely to circumvent the stringent gatekeeping requirements and procedural bars of § 2255. Section 2255 "is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a [Section] 2255 motion." *In re Vial*, 115 F.3d at 1194 n. 5 (internal citations omitted). "[T]o prevent the exception from swallowing the rule" and "effectively nullify[ing] § 2255's specific limitations," the "savings clause" is narrowly interpreted. *Farkas*, 972 F.3d at 556 (internal quotation marks omitted) (quoting *In re Jones*, 226 F.3d at 333).

A petitioner bears the burden of demonstrating that the § 2255 remedy is "inadequate or ineffective." *See Anderson v. Andrews*, 707 F. App'x 790 (4th Cir. 2018); *McGhee v. Hanberry*,

12

604 F.2d 9, 10 (5th Cir. 1979); *Hayes v. Ziegler*, Civ. No. ICB-11-0261, 2014 WL 670850 (S.D. W. Va. Feb. 20, 2014), *aff'd*, 573 F. App'x 268 (4th Cir. 2014).  Recognizing that § 2255(e) "provides only the tightest alleyway" to relief, *Lester*, 909 F.3d at 716, the Fourth Circuit has announced two tests—one for convictions, the other for sentences—to determine whether the "savings clause" is satisfied.  *Farkas*, 972 F.3d at 556; *United States v. Wheeler*, 886 F.3d 415, 428 (4th Cir. 2018) (applying to sentences); *In re Jones*, 226 F.3d at 333–34 (applying to convictions).

To show that § 2255 is "inadequate or ineffective" when challenging his conviction, a petitioner must show that:

> (1) at the time of the conviction, the settled law of this Circuit or of the Supreme Court established the legality of the conviction;
>
> (2) subsequent to the prisoner's direct appeal and first section 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and
>
> (3) the prisoner cannot satisfy the gate-keeping provisions of section 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333–34.

The requirements of the savings clause are jurisdictional.  Therefore, a petitioner challenging the legality of his conviction under § 2255(e) must meet the *Jones* test for the court to have subject-matter jurisdiction to evaluate the merits of the claims.  *See Wheeler*, 886 F.3d at 423–26.

### B. Analysis

Cochran argues that the law on which his conviction was premised was changed by the Supreme Court's decision in *DePierre v. United States*, 564 U.S. 70 (2011).  His reliance on this case is misplaced.  *DePierre* involved a challenged jury instruction that would have required the

13

jury to find that "cocaine base" exclusively meant "crack cocaine," or cocaine powder that had

been mixed with sodium bicarbonate (*i.e.*, baking soda) to produce solid, smokable crack cocaine.

*Id*. at 77.  This definition was crucial to the defense because the cocaine base that the defendant

had been distributing used a substance other than sodium bicarbonate to convert cocaine powder

into smokable form.  *Id*.  In a 9–0 decision, the Court held that the term "cocaine base" in 21 U.S.C.

841(b)(1) refers not just to crack cocaine, but all cocaine derivatives in chemically basic (*i.e.*,

alkaloid) form.  *Id.* at 89.  In *DePierre*, the Supreme Court explained that "crack cocaine" is one

of several forms of "cocaine base" and that Congress made a deliberate decision in its 1986

amendments to the Controlled Substances Act to punish the trafficking of cocaine in its powder

form less harshly than trafficking in cocaine in its alkaloid or basic form.[6]  *Id.*

Regarding Cochran's position that his conviction is unlawful because neither crack cocaine

nor cocaine base are specifically listed in 21 U.S.C. § 812, he ignores that § 812 prohibits *all forms*

of "cocaine, its salts, optical and geometric isomers, and salts of isomers."  21 U.S.C. § 812(a)(4).

Further, Cochran does not claim that the substances that he possessed with intent to distribute did

not contain such forms of cocaine.  Cochran has provided no evidence that he was convicted of an

offense that has been decriminalized to satisfy the requirements of the savings clause.  Cochran's

claim of actual innocence was properly rejected post-trial, affirmed on appeal, and has not been

altered by a decision issued by the Supreme Court since his sentencing.  He may not use § 2241 to

circumvent the statutory requirements to obtain appellate prefiling authorization to file a

successive § 2255 petition.

---

[6]   Cochran also cites *McFadden v. United States*, 576 U.S. 186 (2015), which he asserts, like *DePierre*, "gave the Novel Statutory Interpretation of 'Title 21 U.S.C. § (a)(1)(b)(1)(A)(ii)(iii) and (B)(ii)(iii)' and the proper definitions and interpretations of 'knowingly' and 'controlled substances' as these terms are used in Title 21 U.S.C.§841(a)(2)." (Petition, ECF No. 1 at 19.)  In *McFadden*, the Supreme Court confirmed the knowledge requirement for prosecutions under the Analogue Act, stating that § 841(a)(1) "requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal schedules."  *McFadden*, 576 U.S. at 192.  *McFadden* does not support Cochran's assertion of actual innocence or warrant review of the instant Petition pursuant to the savings clause.

*IV. Conclusion*

For the foregoing reasons, a separate Order shall enter dismissing without prejudice Cochran's claims for release based on his alleged innocence for lack of jurisdiction and denying Cochran's Motion to Strike (ECF No. 14), Motion for Request for the Court to Take Judicial Notice of Indisputable Adjudicative Facts (ECF No. 16), Motion for Ruling on the Petition for an Emergency Enlargement of Custody (ECF No. 17), Motion for Summary Judgment (ECF No. 25), and Emergency Motion for Immediate Release (ECF No. 26).

Dated this <u>3rd</u> day of August, 2021.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge